UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

JAMES R. TURNER and
JANET C. TURNER,
          Plaintiffs                **Case no. 1:13-cv-1841**

vs.

DITECH MORTGAGE CORP
formerly known as                  **Jury Trial Demand**
SECURITY ONE LENDING, INC.,
          Defendants

## COMPLAINT

Come now the Plaintiffs, James R. Turner and Janet C. Turner, ("Plaintiffs") by counsel,

Rudolph Wm. Savich, and for their complaint against the Defendant, Ditech Mortgage Corp.

formerly known as Security One Lending, Inc., ("Defendant") allege as follows:

### INTRODUCTION

1. This cause of action is brought under the Federal Equal Credit Opportunity Act, 15

U.S.C. § 1691, *et seq.* ("ECOA"); the Indiana Deceptive Consumer Sales Act, Indiana Code §

24-5-0.5-1, *et seq.* ("DCSA"); the Indiana Crime Victims Relief Act ("CVRA"), Indiana Code §

34–24–3–1 for damages resulting from a violation of Indiana Code § 35–43–1–2(a) ("criminal

mischief"); and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Florida

Statutes, Chapter 501, Part II.

2. The ECOA regulates what a person must do when it accepts a consumer's application

for credit and acts upon it.

3. One of the requirements imposed by the ECOA upon creditors who deny credit to

1

consumers is to provide the applicant with a statement of reasons for the denial of credit and to provide disclosures mandated by 15 U.S.C. § 1691(d)(2).

4. Defendant accepted Plaintiffs' application for an extension of credit in the form of a Home Equity Conversion Mortgage ("HECM"), a so-called "reverse mortgage", under 12 U.S.C. § 1715z-20. Although Defendant denied Plaintiffs' request for an HECM, Defendant failed to provide a notice and disclosure containing the information required by 15 U.S.C. § 1691(d)(2).

5. The Indiana DCSA, is an Indiana state statute designed to "protect consumers from suppliers who commit deceptive and unconscionable sales acts." Indiana Code § 24-5-0.5-1.

6. The Defendant committed a deceptive act under Indiana Code § 24-5-0.5-3 when its representative, Rebecca Vadas, personally delivered a brochure to Plaintiffs in connection with their meeting concerning application for a reverse mortgage which stated, "There are no income or credit requirements." The face-to-face meeting between the Plaintiffs and Rebecca Vadas at which the brochure was delivered occurred at the Plaintiffs' summer home in Monroe County, Indiana in 2012.

7. Despite the written assurance that there would be no credit requirements, the Defendant denied Plaintiffs' application for a reverse mortgage due to matters pertaining to their credit history. The representation that there were no credit requirements was a false statement. The Defendant knew or should have known that the representation that there were no credit requirements was false.

8. The CVRA is an Indiana statute which provides civil remedies for victims of certain Indiana criminal offenses against property listed in the statute including criminal mischief as defined in Indiana Code § 35–43–1–2(a)(2) (knowingly or intentionally causing another to suffer

pecuniary loss by deception).

9. Defendant's statement that there were no credit requirements in connection with the reverse mortgage application was a false statement which Defendant knew or should have known was false and which caused Plaintiffs to suffer a pecuniary loss.

10. The FDUTPA is a Florida state statute enacted, "To protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202. A deceptive act or practice is one that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment. By providing the Plaintiffs with a false statement assuring them that there were no credit requirements in connection with their application for a reverse mortgage, the Defendant committed a deceptive act to the detriment of the Plaintiffs.

## JURISDICTION

11. Jurisdiction is proper pursuant to the ECOA, 15 U.S.C. § 1691e(f) and federal question jurisdiction under 28 U.S.C. § 1331. Supplemental jurisdiction is proper under 28 U.S.C. § 1367. Proper venue lies in the Southern District of Indiana under 28 U.S.C. §1391(b)(2) in that a substantial part of the events giving rise to the Plaintiffs' claim occurred in Monroe County, Indiana.

## PARTIES

12. Plaintiffs are consumers defined and governed by the ECOA.

13. At all times relevant, Plaintiffs have been "senior consumers" as that term is defined in the DCSA, Ind. Code § 24-5-0.5-29(a)(11), and "senior citizens" under the FDUTPA, Florida

3

Statute § 501.2077(1)(e).

14. At all times relevant, Plaintiffs have been "consumers" as that term is defined in the FDUTPA, Florida Statute § 501.203(7).

15. Defendant is a legal entity doing business as a lender. At all times relevant hereto, Defendant was a "creditor" as defined by the ECOA.  Defendant is a "supplier" as defined by the Indiana DCSA. Indiana Code  § 24-5-0.5-2(a)(3).

16.  At the time of the actions complained of herein, Defendant maintained an office in Monroe County, Indiana at 525 South Walker Street, #106, Bloomington, IN 47403.

## FACTS

17. Plaintiffs are the owners of a certain parcel of real estate together with a dwelling house located thereon located in Monroe County, Indiana at 6271½ W. McNeely Street, Ellettsville, IN 47429, (hereinafter the "Ellettsville Rental House").

18. The Ellettsville Rental House is subject to a mortgage in favor of Nationstar Mortage, LLC ("Nationstar").[1]

19. Nationstar filed a complaint to foreclose its mortgage in Monroe Circuit Court, Bloomington, Indiana on January 5, 2010 under cause number 53C04-1001-MF-00013 (the "Nationstar Foreclosure case").

20. Plaintiffs filed a counterclaim against Nationstar in the Nationstar Foreclosure case. After protracted litigation, the parties met for formal mediation on October 18, 2012.

21. Plaintiff and Nationstar entered into a Settlement Agreement (the "Nationstar

---

[1] Plaintiffs previously contested the validity of Nationstar's mortgage lien against the Ellettsville Rental House. However, that claim was resolved by the Nationstar Settlement Agreement discussed below.

Settlement Agreement") on October 18, 2012. One of the terms of the Nationstar Settlement Agreement was that the Plaintiffs would pay Nationstar the sum of $19,000.00 by February 1, 2013. According to the terms of the Nationstar Settlement Agreement, the Nationstar Foreclosure case would be dismissed after the $19,000.00 payment was made.

22. Plaintiffs maintain their legal residence at 4297 North Course Lane, Avon Park, FL 33825.  Said residential real estate is hereinafter referred to as the "Florida Residence".

23. On October 18, 2012, the Plaintiffs owned the Florida Residence as tenants by the entireties free of any mortgage lien. There was a recorded homeowners' association lien which had been paid but not released of record.

24. Prior to the mediation with Nationstar on October 18, 2012, Plaintiffs had been in contact on or about September 20, 2012, with a representative of Defendant named Rebecca Vadas. Ms. Vadas maintained an office in Monroe County, Indiana. She presented Plaintiffs with a business card indicating she was a "Mortgage Loan Officer 'Serving the State of Indiana'", including an email address, RVadas@S1L.com, indicating she represented Defendant and setting forth the Defendant's name, logo and NLMS license number. Based upon this contact with Defendant's representative, Plaintiffs believed that they would qualify for a reverse mortgage on their Florida residence.

25. At the time of entering the Nationstar Settlement Agreement, Plaintiffs intended to obtain the $19,000.00 which was due to be paid on February 1, 2013, by borrowing money secured by an HECM against the Florida Residence.

26. In October, 2012, Plaintiffs were staying at their summer home in Monroe County, Indiana located at 6271 W. McNeely St., Ellettsville, IN 47429 (the "Summer Home"). The

Summer Home is adjacent to the Ellettsville Rental House.

27. October 18, 2012 was a Thursday. The mediation with Nationstar lasted late into the afternoon. James R. Turner began the process of making formal application for a reverse mortgage on the Florida Residence by scheduling a meeting with Rebecca Vadas. On Monday, October 22, 2012 at 1:00 p.m., the Plaintiffs met personally with Rebecca Vadas at their Summer Home in Monroe County, Indiana. At the meeting, Vadas assured them that they should be able to obtain a reverse mortgage secured by the Florida Residence.

28. At or prior to the October 22, 2012 meeting with Plaintiffs, Vadas delivered a preprinted full color brochure bearing Defendant's logo which contained the following statement, "There are no income or credit requirements." A copy of the brochure is attached to this Complaint and marked as Exhibit "A".

29. The Plaintiffs' Summer Home is subject to a mortgage serviced by Bank of America. The Bank of America mortgage loan was involved in a foreclosure and related litigation.

30. The result of the October 22, 2012, meeting was that the Plaintiffs decided to go forward with the process of applying for an HECM with Defendant, confident that the pending foreclosure cases related to the Summer Home and the Ellettsville Rental House would not disqualify them from obtaining an HECM on the Florida Residence.

31. As part of the HECM application process, the Plaintiffs were required to complete Federal Housing Authority ("FHA") approved reverse mortgage counseling. Defendants completed the FHA counseling with Esther P. DiMarco of "Money Management International Slidell" on October 31, 2012.

32. Plaintiffs left their Summer Home in Monroe County, Indiana to travel to their

6

permanent residence in Florida. They arrived at the Florida Residence on November 8, 2012.

33. On or about November 16, 2012, Defendant's employee, Stephen Caruso, took Plaintiffs' formal application for the HECM over the telephone. Defendant assigned application number #R2012116934 to Plaintiffs' HECM application.

34. Defendant prepared a Good Faith Estimate of expenses related to the proposed HECM dated November 16, 2012.

35. On  November 20, 2012, FHC Insurance faxed the declaration page pertaining to the homeowner's insurance coverage for the Florida Residence to Mr. Turner at the Florida Residence.

36. On November 26, 2012 date Plaintiffs met with Gladys L. Morgan and paid $300 for an appraisal of the Florida Residence. On November 26, 2012, Ms. Morgan also provided Plaintiffs with a complete closing package dated December 29, 2013.

37. On December 4, 2012, an FHA Case number was assigned to the HECM application case.

38. Sometime prior to April 22, 2013, Defendant prepared a document dated December 26, 2012 and titled "Approved Loan Notification" stating that the HECM was "approved" with conditions which included a requirement that the Plaintiffs either be current on the Bank of America and Nationstar mortgage loans or that the "foreclosure[s] must have been completed." In effect, the "approval" was actually a denial because the Plaintiffs could not and never intended to have concluded both the Nationstar and Bank of America foreclosure cases prior to closing the HECM with Defendant. Plaintiffs were not provided with a copy of the Approved Loan Notification until it was faxed to their attorney by Defendant's in-house counsel on April 22,

7

2013. A copy of the Approved Loan Notification is attached to this Complaint and marked as Exhibit "B".

39. Defendant's representative, Stephen Caruso, notified Plaintiffs verbally by telephone on or about December 27, 2012 that the Defendant had denied the loan application.

40. Shortly after being verbally notified that the HECM was denied by Defendant, Plaintiffs contacted another reverse mortgage broker, Jefferson Bank, regarding applying for an HECM. Jefferson Bank instructed Plaintiffs to request that their FHA HECM Case file be transferred from Defendant to Generation Mortgage.

41. On January 1, 2013, Plaintiffs signed a letter addressed "To whom this may concern" requesting, "Please accept this letter as authorization to transfer my FHA Case # ____ To Generation Mortgage ID # 1907900003." Plaintiffs' sole reason for requesting Defendant to transfer their application to Generation Mortgage was that Defendant's employee, Stephen Caruso, had informed them that Defendant had denied their application for an HECM.

42. On information and belief, Plaintiff's FHA case file was transferred to Generation Mortgage on January 9, 2013.

43. On or about January 11, 2013, Defendant prepared and mailed to Plaintiffs a document titled "Notice of Denial, Termination or Change" indicating it was from Maria Blank. Paragraph 1 of the Notice of Denial, Termination or Change contains the following language, "The decision to deny your application was based on the following reasons(s):              ". There is no information contained in the space apparently intended for insertion of a statement of the reasons for denial of the HECM. The Notice of Denial, Termination or Change dated January 11, 2013, is attached to this Complaint and marked as Exhibit "C".

44. On January 29, 2013 Plaintiffs sent a handwritten letter to Defendant stating, "To whom it may concern, I would like to know the reason for denial of the reverse mortgage I applied for."

Please send to:

JIM TURNER

4292 No Course La.

Avon Pk, Florida 33825

Thanks Jim Turner

A copy of the letter from Plaintiff James R. Turner to Defendant is attached to this Complaint and marked as Exhibit "D".

45. Plaintiffs did not receive a response to their letter dated January 29, 2013. So, on April 2, 2013 Plaintiffs sent another letter by certified mail again asking for a written statement of the reasons why Defendant had denied their HECM loan application. A copy of the letter from the Plaintiffs to Defendant dated April 2, 2013 is attached to this Complaint and marked as Exhibit "E"

46. On April 22, 2013, Defendant's in-house counsel faxed a letter to Plaintiff's counsel representing the following regarding preparation of the Notice of Denial, Termination or Change:

> The operator preparing the document should have selected the reason for the notice from a drop down menu to read 'Application withdrawn by applicant', but as you know, left the data field blank.

47. On May 17, 2013, Defendant's in-house counsel, William Trask, sent a revised Notice of Denial, Termination or Change dated May 16, 2013, to Plaintiffs' counsel by email. Paragraph 1 of the revised Notice of Denial, Termination or Change contains the following

9

language, "The decision to deny your application was based on the following reasons(s):
Application withdrawn by borrower."

48. Plaintiffs were not able to find a reverse mortgage lender who would approve and
close on an HECM before the February 1, 2013 deadline for them to pay $19,000 to Nationstar
pursuant to the Nationstar Settlement Agreement.

49. Plaintiffs eventually were able to obtain an HECM on the Florida Residence from
another lender, Proficio Mortgage Ventures, LLC ("Proficio"). The HECM with Proficio was
closed on June 26, 2013.

50. The HECM for which Plaintiffs applied with Defendants was a fixed rate loan with an
interest rate of 5.06%. The pay-off balance on the proposed HECM after 25 years was $691,844.

51. On January 30, 2013, the FHA issued Mortgagee Letter 2013-01 which ended the
availability of new fixed rate HECM loans. As a result, the HECM obtained by the Plaintiffs
from Proficio is an adjustable rate mortgage with variable interest. The interest rate on the
Proficio HECM is capped at 12.954% (plus 1.25% mortgage insurance premium). The pay-off
balance in 25 years could be $4,891,007.48 if the adjustable rate reaches the cap.

52. Plaintiffs relied on the false representation made by Defendant that Plaintiffs' credit
negative history would not be used as a basis to deny them the HECM for which they applied.

53. Plaintiffs' reliance on Defendant's false representation regarding the fact that the
HECM loan was not conditioned on any credit requirements was reasonable. The HECM
program is established under 12 U.S.C. § 1715z-20. Eligibility requirements are found at 24
C.F.R. Part 206. The only eligibility requirement pertaining to credit standing provided in the
regulations is found at 24 C.F.R. § 206.37 which provides, "Each mortgagor must have a general

credit standing satisfactory to the Secretary." The Secretary of Housing and Urban Development

has issued guidance for HECM eligibility as Directive Number: 4235.1. Chapter 4 of Directive

4235.1 addresses underwriting issues. Paragraph 4-3 of Directive 4235.1 sets forth the program

requirements as follows:

A borrower must be rejected for any of the following reasons:

A. Delinquent Federal debts.  If the borrower is presently
delinquent on any Federal debt (e.g., VA-guaranteed mortgage, HUD
Section 312 Rehabilitation loan or Title I loan, Federal student
loan, Small Business Administration loan, delinquent Federal
taxes, etc.) or has a lien, including taxes, placed against his
or her property for a debt owed to the United States, the
borrower is not eligible until the delinquent account is brought
current, paid or otherwise satisfied, or a satisfactory repayment
plan is made between the borrower and the Federal agency owed and
is verified in writing.

B. Suspensions and debarments.  A borrower suspended, debarred, or
otherwise excluded from participation in the Department's
programs is not eligible for a HECM.  The lender must examine
HUD's "Limited Denial of Participation (LDP) List" and the
government-wide General Services Administration's (GSA) "List of
parties Excluded from Federal Procurement or Nonprocurement
Programs." If the name of any party to the transaction appears on
either list, the application is not eligible for mortgage
insurance.

C. Credit Alert Interactive Voice Response System (CAIVRS).  Lenders
must screen all borrowers using CAIVRS.  If CAIVRS indicates the
borrower is presently delinquent or has had a claim paid within
the previous three years on a loan made or insured by HUD on his
or her behalf, the borrower is not eligible.  Exceptions to this
policy may be granted under the following situations:

1)Assumptions.  If the borrower sold the property, with or
without a release of liability, to a mortgagor who
subsequently defaulted and it can be established that the
loan was not in default at the time of assumption, the
borrower is eligible.

2)Divorce.  A borrower may be eligible if the divorce decree or legal separation agreement awarded the property and responsibility for payment to the former spouse.  However, if a claim was paid on a mortgage in default at the time of the divorce, the borrower is not eligible.

3)Bankruptcy.  When the property was included in a bankruptcy that was caused by circumstances beyond the borrower's control (such as the death of the principal wage earner; loss of employment due to factory closings, reductions-in-force, or serious long-term uninsured illness), the borrower may be eligible.

If the lender has reason to believe the CAIVRS message is erroneous or must establish the date of claim payment, it must contact the local HUD office for instructions or documentation to support the borrower's eligibility.  The local HUD Office can provide information regarding when the three-year waiting period has passed or that the social security number in CAIVRS is an error.

The foregoing FHA guidance governing HECM loans contains no restrictions which would have prohibited Defendant from granting Plaintiffs the HECM for which they applied. Plaintiffs had no source of information regarding Defendant's requirements for approval of an HECM other than Defendant itself.

54. Plaintiffs acted in reliance upon Defendant's false statements regarding credit requirements by applying for an HECM with Defendant instead of seeking an HECM with another lender. Had Defendant been truthful about its credit requirements, Plaintiffs could have found a reverse mortgage lender (such as Proficio) to approve their application for an HECM despite their negative credit history. As it was, Defendant's false statement regarding the impact of Plaintiff's credit history on the decision to approve or deny the HECM cost the Plaintiffs over two months' time in applying for the HECM with Defendant which was ultimately denied.

12

55. Plaintiffs have suffered damage as a direct result of the Defendant's false statement regarding the lack of credit requirements in connection with the HECM loan application process in that they could have obtained a fixed rate HECM with an ultimate pay-off of $691,844 if they had immediately applied with a reverse mortgage lender such as Proficio who provided the HECM despite the Plaintiffs' negative credit history. Instead, because Plaintiffs relied on Defendant's false statement, they lost over two months in the loan application process and were not able to close on a fixed rate HECM before FHA changed the rules to eliminate the availability of fixed rate loans.

56. The difference between the pay-off of the proposed fixed rate loan and the potential pay-off of the adjustable rate HECM the Plaintiffs finally obtained is $4,199,163.48.

57. In addition to the damage suffered by Plaintiffs due to the increased cost of the adjustable rate loan, Plaintiffs were unable to obtain the $19,000.00 which they were obligated to pay under the Nationstar Settlement Agreement to stop foreclose on the Ellettsville Rental House.

58. In order to stop Nationstar from obtaining a final judgment of foreclosure against the Ellettsville Rental House, Plaintiff James R. Turner was forced to file a petition for relief under Chapter 13 of the United States Bankruptcy Code. The bankruptcy was filed August 15, 2013, in the United States Bankruptcy Court for the Southern District of Indiana- Indianapolis Division as Bankruptcy Case number 13-08708-JMC-13.

59. The Chapter 13 plan proposed by James R. Turner to cure the default of payment of the $19,000.00 has yet to be confirmed.

60. The Plaintiffs have sentimental and personal family attachment to the Ellettsville

Rental House. Janet C. Turner's daughter and son-in-law live in the Ellettsville Rental House as their sole, full-time personal residence. James R. Turner personally supervised the construction of the Ellettsville Rental House which is located immediately adjacent to the Plaintiff's Summer Home. Janet C. Turner is in very poor health and it gives her great comfort to know that her daughter is living next door and is available to assist in the event of any medical emergencies and to provide companionship at other times. The possibility of losing the Ellettsville Rental House to foreclosure is a source of great anxiety and distress which is ongoing. The prospect of Janet C. Turner's daughter and her husband having to move out of the Ellettsville Rental House and having strangers move in next door instead is very distressing to the Plaintiffs.

61. Defendant's agent, Rebecca Vadas, knew that the reason that the Plaintiffs were applying for an HECM was obtain funds to save the Ellettsville Rental House from foreclosure. The fact that failure to obtain the funds from the HECM by February 1, 2013 would result in default on the Nationstar Settlement Agreement and would place the Plaintiffs in jeopardy of losing the Ellettsville Rental House to foreclosure was known to Ms. Vadas.

62. Stress and anxiety over the possibility of losing a property to foreclosure are the natural and foreseeable consequences of the Defendant's deceptive conduct.

**COUNT I- CAUSE OF ACTION FOR VIOLATION OF
THE FEDERAL EQUAL CREDIT OPPORTUNITY ACT**

63. All the factual allegations set forth in the foregoing rhetorical paragraphs 1 through 62 are incorporated herein by reference.

64.  The Equal Credit Opportunity Act ("ECOA"), in particular 15 U.S.C. § 1691(d) provides:

14

(d) Reason for adverse action; procedure applicable; "adverse action" defined

(1) Within thirty days (or such longer reasonable time as specified in regulations of the Bureau for any class of credit transaction) after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application.

(2) Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor. A creditor satisfies this obligation by--

(A) providing statements of reasons in writing as a matter of course to applicants against whom adverse action is taken; or

(B) giving written notification of adverse action which discloses (i) the applicant's right to a statement of reasons within thirty days after receipt by the creditor of a request made within sixty days after such notification, and (ii) the identity of the person or office from which such statement may be obtained. Such statement may be given orally if the written notification advises the applicant of his right to have the statement of reasons confirmed in writing on written request.

(3) A statement of reasons meets the requirements of this section only if it contains the specific reasons for the adverse action taken.

(4) Where a creditor has been requested by a third party to make a specific extension of credit directly or indirectly to an applicant, the notification and statement of reasons required by this subsection may be made directly by such creditor, or indirectly through the third party, provided in either case that the identity of the creditor is disclosed.

(5) The requirements of paragraph (2), (3), or (4) may be satisfied by verbal statements or notifications in the case of any creditor who did not act on more than one hundred and fifty applications during the calendar year preceding the calendar year in which the adverse action is taken, as determined under regulations of the Bureau.

(6) For purposes of this subsection, the term "adverse action" means a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested. Such term does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit.

65. The above-quoted statute gives the creditor two options for compliance. The creditor can either (1) provide a statement of reasons for the denial in writing pursuant to 15 U.S.C. § 1691(d)(1)(A) within 30 days or, (2)  provide a notice pursuant to 15 U.S.C. § 1691(d)(1)(B) within 30 days of the adverse action which informs the applicant that the applicant will be supplied with a statement of reasons within 30 days after the applicant requests the statement within 60 days of receipt of the notice of adverse action.

66. The Notice of Denial, Termination or Change dated January 11, 2013 (Exhibit "C") did not comply with 15 U.S.C. § 1691(d) in that it neither set forth the specific reason for denial of the HECM nor contained a statement informing the Plaintiffs that they could obtain a statement of reasons for the denial by requesting such statement within 60 days.

67. By failing to provide a notice with the required information, Defendant violated the ECOA.

68. Even though the Notice of Denial, Termination or Change did not advise Plaintiffs that they had the right to be given a statement of the reasons for the denial within 30 days after Plaintiffs requested such a statement, the Plaintiffs happened to send a written request for a statement of reasons on January 29, 2013 (Exhibit "D"). Despite the fact that Plaintiffs requested a statement of reasons for the denial within 60 days of the date of the notice of adverse action, Defendant still did not provide the statement of reasons within 30 days. Defendant's failure to provide a statement of reasons for the adverse action within 30 days after a timely written request therefor was made by Plaintiffs constituted a second violation of the ECOA.

69. Plaintiffs have suffered actual damages due to the Defendant's violation of 15 U.S.C. § 1691(d) in that Plaintiffs were not able to evaluate the sufficiency or accuracy of Defendant's reason

16

for denying their application for an HECM. As of the filing of this Complaint, Defendant has yet to provide Plaintiffs with a legitimate and accurate written statement of the reason for which their loan application was denied. Accurate information regarding the Defendant's actual reason for denying the loan application would have guided Plaintiffs in their effort to obtain the financing they needed to meet their obligation under the Nationstar Settlement Agreement. Rather than give Plaintiffs a true and accurate written statement of the reasons for denial, Defendant's employee verbally insulted James R. Turner telling him that he did not know how to manage his finances. This caused Plaintiffs to suffer embarrassment and humiliation.

70. The lack of accurate information regarding the reason for the denial delayed the Plaintiffs' search for an HECM which further resulted in their inability to close on a fixed rate HECM before the FHA rule change. This could ultimately result in an increase in the cost of the HECM of $4,199,163.48.

71. Defendant is liable to Plaintiffs under 15 U.S.C. § 1691e(a) for their actual damages suffered by reason of Defendant's violation of 15 U.S.C. § 1691(d).

72. Defendant's violation of 15 U.S.C. § 1691(d) is persistent and intentional as evidenced by the fact that Defendant has never provided a truthful and accurate written statement of its actual reasons for denying the HECM.

73. Defendant is liable to Plaintiffs under 15 U.S.C. § 1691e(b) for punitive damages of up to $10,000.00 for each violation of 15 U.S.C. § 1691(d).

74. Defendant is liable to Plaintiffs for their attorney fees and costs of this action pursuant to 15 U.S.C. § 1691e(d).

## COUNT II- CAUSE OF ACTION FOR VIOLATION OF
## THE  INDIANA DECEPTIVE CONSUMER SALES ACT

75. All the factual allegations set forth in the foregoing rhetorical paragraphs 1 through 74 are incorporated herein by reference.

76. Defendant's false statement that "There are no income or credit requirements" in its advertising brochure (Exhibit "A") is a deceptive act under Indiana Code § 24-5-0.5-3.

77. Defendant's false statement was made "as part of a scheme, artifice, or device with intent to defraud or mislead" making the false statement an incurable deceptive act as defined by Indiana Code § 24-5-0.5-2(a)(8).

78. Plaintiffs notified Defendant of the deceptive act by letter from their attorney dated May 23, 2013.  A copy of the letter notifying Defendant of the deceptive act is attached to this Complaint and marked as Exhibit "F".

79. Defendant took no action to cure the deceptive act within 30 days of receipt of the notice dated May 23, 2013. Because more than 30 days have elapsed since Defendant was notified of the deceptive act, the false statement also meets the definition of an "uncured deceptive act" under Indiana Code § 24-5-0.5-2(a)(7).

80. The Plaintiffs relied on the Defendant's deceptive act, i.e. the false statement that there were no credit requirements associated with the application for an HECM when they decided to apply for a reverse mortgage with Defendant.

81. The Plaintiffs suffered actual damages as a result of Defendant's deceptive act as described in rhetorical paragraphs 55 through 62 of this Complaint including an increase in the cost of the HECM of up to $4,199,163.48; stress, anxiety and humiliation caused by the Plaintiffs' inability to meet the February 1, 2013 deadline to pay $19,000.00 to Nationstar under the Nationstar

Settlement Agreement; and embarrassment, humiliation, and expense occasioned by the necessity of filing personal Chapter 13 bankruptcy in order to stop Nationstar's efforts to foreclose on the Ellettsville Rental House.

82. The Plaintiffs are "elderly persons" as defined in Indiana Code § 24-5-0.5-(a)(11). Elderly persons are entitled to recover treble damages under Indiana Code § 24-5-0.5-4(i), if appropriate.

83. Plaintiffs' actual damages will include the increase in interest the Plaintiffs will pay on the adjustable rate HECM they eventually obtained over the amount they would have paid for a fixed rate HECM; the cost of James R. Turner's bankruptcy; compensation for the embarrassment and humiliation of having to file bankruptcy; and compensation for the anxiety and stress associated with missing the February 1, 2013 deadline to pay Nationstar and the attendant risk of foreclosure on the Ellettsville Rental House. Three times the actual damages suffered by Plaintiffs could easily exceed $12 million.

**COUNT III - CAUSE OF ACTION FOR**
**VIOLATION OF THE INDIANA CRIME VICTIMS RELIEF ACT**

84. All the factual allegations set forth in the foregoing rhetorical paragraphs 1 through 83 are incorporated herein by reference.

85. Indiana Code § 35-43-1-2 (a) provides, in part:

A person who:

*   *   *   *

(2) knowingly or intentionally causes another to suffer pecuniary loss by deception or by an expression of intention to injure another person or to damage the property or to impair the rights of another person;

commits criminal mischief, a Class B misdemeanor.

19

86. Defendant knowingly or intentionally caused Plaintiffs to suffer a pecuniary loss by the deception described in the previous paragraphs of this Complaint.

87. Defendant is liable to Plaintiffs for up to three times the actual damages suffered by Plaintiffs and attorney fees and costs and expenses associated with this litigation under Indiana Code § 34-24-3-1.

### COUNT IV - CAUSE OF ACTION FOR VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

88. All the factual allegations set forth in the foregoing rhetorical paragraphs 1 through 87 are incorporated herein by reference.

89. Plaintiffs are residents of Florida.

90. The real estate which was the subject of the HECM for which Plaintiffs applied with Defendant is Plaintiffs' primary personal residence located in the state of Florida.

91. Florida Statute § 501.204(1) declares that "unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful.

92. Defendant's false statement contained in its sales brochure that there were no credit requirements in connection with the application for an HECM was an unfair and deceptive act on the part of Defendant.

93. The Plaintiffs suffered actual damages as a result of Defendant's unfair and deceptive act as described in rhetorical paragraphs 55 through 62 of this Complaint including an increase in the cost of the HECM of up to $4,199,163.48; stress, anxiety and humiliation caused by the Plaintiffs' inability to meet the February 1, 2013 deadline to pay $19,000.00 to Nationstar under the Nationstar Settlement Agreement; and embarrassment, humiliation, and expense occasioned by the necessity of filing personal Chapter 13 bankruptcy in order to stop Nationstar's efforts to foreclose

20

on the Ellettsville Rental House.

94. Plaintiffs' damages were caused by the unfair and deceptive act of Defendant.

95. Florida Statute § 501.211(2) provides:

In any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs as provided in s. 501.2105.

96. Defendant is liable for the remedies and penalties provided by the FDUTPA.

97. Defendant is liable to Plaintiffs for the reasonable attorney fees incurred in bringing this action pursuant to Florida Statute § 501.2105.

98. Plaintiffs are both over 60 years of age meaning that they meet the definition of "senior citizens" set forth in Florida Statute § 501.2077(1)(e).

99. Florida Statute § 501.2077(2) provides:

A person who is willfully using, or has willfully used, a method, act, or practice in violation of this part which victimizes or attempts to victimize a senior citizen or a person who has a disability is liable for a civil penalty of not more than $15,000 for each such violation if she or he knew or should have known that her or his conduct was unfair or deceptive.

100. Defendant's use of the deceptive brochure containing the false statement that there were no credit requirements associated with the HECM application was willful.

101. Defendant knew or should have known that its conduct in providing the false brochure to Plaintiffs was unfair or deceptive.

102. Defendant is liable for a civil penalty of up to $15,000 for each violation of the FDUTPA pursuant to Florida Statute § 501.2077(2).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for the following relief:

1. With regard to Count I for violation of the Federal Equal Credit Opportunity Act, Plaintiffs seek a judgment against Defendant in the amount of their actual damages as determined by the trier of fact but no less than $4,199,163.48; punitive damages of $10,000 under 15 U.S.C. § 1691e(a) for each violation of 15 U.S.C. § 1691(d); attorney fees and costs;

2. With regard to Count II for violation of the Indiana Deceptive Consumer Sales Act, Plaintiffs seek judgment for three times their actual damages (a figure which could easily exceed $12 million) pursuant to Indiana Code § 24-5-0.5-4(i) together with the costs of this action;

3. With regard to Count III for remedies available under the Indiana Crime Victims Relief Act for damages resulting from criminal mischief committed by Defendant, Plaintiffs seek judgment for three times their actual damages (a figure which could easily exceed $12 million), attorney fees, costs and expenses of litigation;

4. With regard to Count IV for violation of the Florida Deceptive and Unfair Trade Practices Act, Plaintiffs seek judgment in the amount of their actual damages as determined by the trier of fact including an amount of up to $4,199,163.48 for the potential increase in interest incurred as a result of having to accept a variable interest HECM together with the cost of having to file bankruptcy and actual general damages for anxiety, embarrassment, humiliation and stress; civil penalties of $15,000 for each violation of the FDUTPA; attorney fees and the costs of this action; and

5. And all other appropriate relief.

Respectfully submitted,


/s/ Rudolph Wm. Savich_____
Rudolph Wm. Savich
Attorney for Plaintiffs
409 S. College Ave., Ste. A
Bloomington, IN 47403-1514
Tel. (812) 336-7293
Fax: (812) 336-7268
Email: rsavich@aol.com


## JURY TRIAL DEMAND

Plaintiffs demand trial by jury of all issues triable by jury.

Respectfully submitted,


/s/Rudolph Wm. Savich_____
Rudolph Wm. Savich
Attorney for Plaintiffs

23